# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF MISSISSIPPI
# OXFORD DIVISION

**JOHN ARTHUR FORREST**                                              **PETITIONER**

**v.**                                             **No. 3:11CV125-MPM-DAS**

**ATTORNEY GENERAL OF THE**
**STATE OF MISSISSIPPI, ET AL.**                                        **RESPONDENTS**

## MEMORANDUM OPINION

This matter comes before the court on the *pro se* petition of John Arthur Forrest for a writ of *habeas corpus* under 28 U.S.C. § 2254. Forrest has also filed a supplement to his petition. The State has responded to both the petition and supplement, and Forrest has filed a traverse. The matter is ripe for resolution. For the reasons set forth below, the instant petition for a writ of *habeas corpus* will be denied.

## Procedural Posture

John Arthur Forrest is in the custody of the Mississippi Department of Corrections and is currently housed at the South Mississippi Correctional Institution in Leakesville, Mississippi. Forrest was convicted in the Circuit Court of Montgomery County, Mississippi, of Count I: Aggravated Assault, and Count II: Possession of a firearm by a convicted felon. *See* State Court Record ("SCR"), Vol. 1, p. 41. On October 12, 2009, Forrest was sentenced to serve twenty years for the assault charge and ten years for the firearm charge in the custody of the Mississippi Department of Corrections, Count II to run consecutively to Count I. SCR, Vol. 1, p. 41. In addition, the court found that, as Forrest is a habitual offender under Miss. Code Ann. § 99-19-81, he is not eligible for parole, probation, or any other type of early release. *Id.*

Forrest appealed his conviction and sentence to the Mississippi Supreme Court, raising the following issues (as stated by counsel):

> Issue 1. Whether the Trial Court erred in not ordering a competency hearing *sua sponte*.
>
> Issue 2. In the alternative, whether the appellant was denied effective assistance of counsel, depriving appellant of his constitutional right to a fair trial.

On November 10, 2010, the Mississippi Court of Appeals found no merit to these issues and affirmed the judgment of the Montgomery County Circuit Court. *Forrest v. State*, 47 So.3d 1194 Miss.Ct.App. 2010)(Cause No. 2009–KA–01729–COA).

On November 7, 2011, Forrest filed a *pro se* Application for Leave to Proceed in the Trial Court with a Motion for Post-Conviction Relief in the Mississippi Supreme Court, raising the following issues (as stated by Forrest):

> Issue 1. Petitioner was denied effective assistance of counsel where the state violated his 5th amendment rights which was unchallenged at the trial court.
>
> Issue 2. Petitioner was denied due process where the state introduced in to evidence which was never printed or proven to be the weapon defense counsel was ineffective by not retaining a defense expert to rebut the state allegations. The gun submitted at trial was [not] petitioners and the weapon used when crime committed in violation of his 5th 6th and 14th amendments.
>
> Issue 3. Petitioner was denied due process when the state erroneously state at trial petitioner had blood on his hand when arrested, but failed to collect the samples for DNA testing, no testing results in an admission petitioner in fact had no blood on his hands when arrested. This denied petitioner due process and violated his 5th, 6th, and 14th amendment.
>
> Issue 4. Where the trial court erred in not ordering a competency hearing *sua sponte*.
>
> Issue 5. In the alternative, whether the appellant was denied effective

>       assistance of counsel, depriving appellant of his constitutional right to
>       a fair trial.
>
> Issue 6. Petitioner was denied effective assistance of counsel where the state
> introduced prejudicial evidence during trial that should have been
> stipulated by the parties. This inadmissible evidence being submitted
> at trial denied petitioner his 14th amendment right to a fair trial with
> effective assistance of counsel.
>
> Issue 7. Petitioner sentence violates his 8th amendment right due to it being
> tantamount to a life sentence a sentence the conviction fail to impose.

On January 19, 2012, the Mississippi Supreme Court filed an order denying the application. *See* Miscellaneous Pleadings, Cause No. 2011-M-01653.

In the instant petition for a writ of *habeas corpus*, Forrest raises the following issues (*pro se*):

> **Ground One.** The trial court erred in not ordering a competency hearing, and both trial and appellate counsel were ineffective in failing to raise that issue.
>
> **Ground Two.** Defense counsel rendered ineffective assistance because he never sent the shotgun to the crime lab to check for fingerprints or DNA, and he should have requested a competency hearing.
>
> **Ground Three.** The court improperly enhanced the petitioner's sentence under Miss. Code Ann. § 99-19-81 because he did not actually serve a term of incarceration of year or more on his prior conviction for attempted grand larceny.

The court permitted Forrest to submit a supplement to his *habeas corpus* petition, and the State responded to that, as well. The supplement to the petition sets forth the following issues:

> **Ground One**. Petitioner did not knowingly or intelligently waived his *Miranda* rights. As such, any statements made at time of his arrest were inadmissible. Trial and appellate counsel rendered ineffective assistance in failing to raise this issue.
>
> **Ground Two**. Petitioner's right to a fair trial was violated where the state introduced unreliable evidence at trial regarding the charge of felon in possession of a firearm, thus violating his due process right. Trial and appellate counsel rendered ineffective assistance in failing to raise this issue.
>
> **Ground Three.** Petitioner was denied the right to a fair trial and due process of the law where the state introduced unreliable and unfounded testimonial evidence at trial

with no factual basis to support it. Trial and appellate counsel rendered ineffective assistance in failing to raise this issue.

**Ground Four.** The trial court erred in not ordering a competency hearing *sua sponte*, and trial counsel rendered ineffective assistance in deciding not to raise this issue.

**Ground Five.** Petitioner was denied effective assistance of counsel, depriving him of his right to a fair trial.

**Ground Six.** Petitioner was denied his right to a fair trial and effective assistance of counsel where the state introduced inadmissible evidence regarding Forrest's status as a habitual offender during trial without objection.

**Ground Seven.** Petitioner's sentence was imposed in violation of the Eighth Amendment prohibition against cruel and unusual punishment.

Forrest has exhausted his state court remedies as to all grounds of his original petition and its supplement, and any further return to the state court on these issues would be futile.

### Facts Established in the Record

Valerie Hardwick lived in Winona with her sister, Natasha Burt and their mother, Betty Hardwick. Betty and the defendant, John Forrest, previously had a romantic relationship which had ended about two months before the shooting. On August 6, 2009, Valerie was "[a]t home" with Betty Hardwick, Natasha, and Valerie's boyfriend, Vincent Berry. At about 5:30 that afternoon, after Betty Hardwick had left for work, John Arthur Forrest entered the house carrying a long gun with a wood stock. He went "straight to the back" with it.[1] Valerie noticed that he reeked of alcohol. He then staggered back through the front of the house, went onto the porch, and fired the gun. He then departed. SCR, Vol. 2, p.52-55.

At about 2:30 to 3:30 a.m., Valerie heard her mother's car when she returned from work. She then heard Forrest yell "goodbye, Betty," and heard "the gun go off." Valerie was frightened and went

---

[1] Prior to this encounter, Natasha had asked Forrest to "please" return her mother's keys. SCR, Vol. 2, p. 54.

to wake up Vincent. By the time he got out of bed, Betty had entered the room, bleeding badly. After Valerie called the police, she heard three knocks on the front door, but she was unable to see who was at the door. Valerie, Betty, and Vincent "stayed in the room until the police came." SCR, Vol. 2, p. 58-61.

Officer Tommy Bibbs of the Winona Police Department responded to the call. When he arrived at the house, he observed an Impala, with the driver's door open, in the driveway.[2] He "followed a trail of blood from the porch" to the back of the house to a room with a closed door. Betty was "slumped over" a big pool of blood on the floor as a "gentleman was holding his hand over her right side, like he was applying pressure." SCR, Vol. 2, p. 67-69.

After talking to witnesses at the hospital, Officer Bibbs found Forrest to be "a person of interest" and went to look for him. Bibbs found Forrest a short while later at the house of Andrew Ratliff, within easy walking distance of Betty's residence. Forrest "was drinking some alcohol" out of a blue cup. Officer Bibbs arrested Forrest, "Mirandized him there one time," placed him in the police car, "Mirandized him" again, and "took him to the police department." There, as Forrest was signing a waiver-of-rights form, Officer Bibbs "noticed he had blood on his hand." Forrest told the officer that "it came from fishing." Officer Bibbs advised him that "he was under arrest for shooting somebody now." Forrest "stated . . . that he hadn't shot Betty."

It was not unusual for Forrest to visit Ratliff because Ratliff's daughter and Forrest's son had a child together. At some point during the day in question, Forrest, carrying a long gun, paid Mr. Ratliff a call. Ratliff saw the gun and told him to "go with that gun." Forrest appeared angry and to have been "drinking a little bit." Forrest left, but came "back later that night . . . [at] about 3:00 that

---

[2] He later found blood on the driver's seat of this car. SCR, Vol. 2, p. 69.

morning." Mr. Ratliff let Forrest into the house, where he used the telephone to call and ask someone to pick him up because he had "just shot Betty." He made several other phone calls, each time requesting a ride because he had "shot Betty." The police arrived 15-20 minutes later to arrest Forrest. SCR, Vol. 2, p. 91-96.

James Eskridge, Forrest's son, testified that he lived three blocks from Betty's house. Late in the evening in question, Forrest knocked on his son's window and told them that "he had just shot Betty." He went on to tell his son, "Son, I will see you later, because I just shot Betty." Not wanting any "part of it," Mr. Eskridge "went back in the house." At one point, Forrest walked behind his son's house, near a curb. Later, Mr. Eskridge found a gun under this curb and led the authorities to it. SCR, Vol. 2, p. 83-87. Officer Michael Gross, assisting in the investigation, was called to Mr. Eskridge's house. He was the one who went to the back yard and retrieved a shotgun from a culvert. SCR, Vol. 2, p. 98-102.

Betty testified that she and Forrest had ended their relationship "about two months before this happened." On August 6, 2009, Forrest went to her house to do his laundry. He told her that he was going to wash his clothes, give her daughter the house key, and leave. Betty left at about 1:00 that afternoon to go to work. When she returned at 2:30 or 2:45 that morning, she was surprised to see him sitting in a chair on her porch. While she was still in her car retrieving her things to go inside, Forrest approached, holding the gun in both hands, pointing it directly at her. He stood about five feet away, told her "goodbye," shot her, placed the gun over his shoulder, and "walked to the back." SCR, Vol. 2, p. 105-09.[3] Betty was wounded in the shoulder and in the hand she had raised to defend herself. SCR, Vol. 2, p. 111.

---

[3] Betty corroborated Valerie's testimony about what happened afterward. SCR, Vol. 2, p. 110-111.

The trial court thoroughly instructed John Forrest regarding his right to testify on his own behalf. The court stressed to Forrest that the decision to testify rested entirely with him. Given the vast amount of evidence from different sources arrayed against his client, Forrest's counsel had chosen the strategy of arguing that Forrest shot Betty, but by accident. Forrest, however, abandoned that strategy when he testified. He took the stand and flatly denied even being present during the shooting. He testified repeatedly that he did not shoot Betty. He also denied ownership of the shotgun admitted into evidence, though he admitted that he owned a 30-06 rifle, which he had possessed on the day of the shooting. SCR, Vol. 2, p. 116-18. He also admitted that he was a convicted felon at the time he carried the 30-06 rifle. The jury believed the prosecution's witnesses and found Forrest guilty of both aggravated assault and being a felon in possession of a firearm.

**Grounds Reviewed on the Merits in State Court**

The Mississippi Supreme Court has already considered all grounds in the instant petition on the merits and decided those issues against Forrest; hence, these claims are barred from *habeas* review by the Antiterrorism and Effective Death Penalty Act, 28 U.S.C. § 2254(d), unless they meet one of its two exceptions:

> (d) An application for a writ of *habeas corpus* on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings *unless* the adjudication of the claim–
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

*Id.* (emphasis added). The first exception, subsection (d)(1), applies to questions of law. *Morris v. Cain*, 186 F.3d 581 (5th Cir. 2000). The second exception, subsection (d)(2), applies to questions of fact. *Lockhart v. Johnson*, 104 F.3d 54, 57 (5th Cir. 1997). Since the petitioner's claims challenge both the application of law and the finding of fact, this court must consider the exceptions in both subsections.

Under subsection (d)(1), a petitioner's claim merits *habeas* review if its prior adjudication "resulted in a decision that was *contrary to*, or involved an *unreasonable application of*, clearly established Federal law." *Id.* (emphasis added). A state court's decision is *contrary to* federal law if it arrives at a conclusion opposite to that reached by the United States Supreme Court on a question of law, or if it decides a case differently from the Supreme Court on a set of "materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 120 S.Ct. 1495, 1523 (2000). A state court's decision involves an *unreasonable application of* federal law if it identifies the correct governing principle but unreasonably (not just incorrectly) applies that principle to facts of the prisoner's case; this application of law to facts must be *objectively* unreasonable. *Id.* at 1521. As discussed below, the petitioner has not shown that the Mississippi Supreme Court unreasonably applied the law to the facts, or that the court's decision contradicted federal law. Accordingly, the exception in subsection (d)(1) does not apply to any of the grounds of the instant petition.

Nevertheless, under § 2254(d)(2) these grounds may still merit review if those facts to which the Mississippi Supreme Court applied the law were determined unreasonably in light of the evidence presented. Because the supreme court is presumed to have determined the facts reasonably, it is the petitioner's burden to prove otherwise, and he must do so with clear and

convincing evidence. *Miller v. Johnson*, 200 F.3d 274, 281 (5th Cir. 2000); 28 U.S.C. § 2254(e)(1). As discussed below, the petitioner has not met this burden; as such, he cannot use subsection (d)(2) to move these claims beyond § 2254(d), which bars from *habeas corpus* review issues already decided on the merits.

## Overlapping Grounds for Relief

There is some overlap in the grounds for relief set forth in the original petition and its supplement. Of the three grounds in the original petition, only Ground 2 is not duplicated in the supplement. The court will thus number the issues in the order they were presented in the supplement – with an eighth ground added corresponding to Ground 2 of the original petition. Though complicated to put into words, the numbering of the grounds for relief in this case is outlined below.

> Ground 1 of Supplement
>
> Ground 2 of Supplement
>
> Ground 3 of Supplement
>
> Ground 4 of Supplement    (same as Ground 1 of the original petition)
>
> Ground 5 of Supplement
>
> Ground 6 of Supplement
>
> Ground 7 of Supplement    (same as Ground 3 of the original petition)
>
> Ground 8 (added by court)    (same as Ground 2 of the original petition)

## Ineffective Assistance of Counsel: Grounds 1, 2, 5, 6, and 8

The court must address claims of ineffective assistance of counsel under the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To prove that

defense counsel was ineffective, the petitioner must show that counsel's performance was deficient and that the deficiency resulted in prejudice to her defense. Under the deficiency prong of the test, the petitioner must show that counsel made errors so serious that he was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland*, 466 U.S. at 687. The court must analyze counsel's actions based upon the circumstances at the time – and must not use the crystal clarity of hindsight. *Lavernia v. Lynaugh*, 845 F.2d 493, 498 (5th Cir. 1988). The petitioner "must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (citation omitted). To prove prejudice, the petitioner must demonstrate that the result of the proceedings would have been different or that counsel's performance rendered the result of the proceeding fundamentally unfair or unreliable. *Vuong v. Scott*, 62 F.3d 673, 685 (5th Cir. 1995), *cert. denied*, 116 S.Ct. 557 (1995); *Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993); *Sharp v. Johnson*, 107 F.3d 282, 286 n.9 (5th Cir. 1997).

### Ground 1: Forrest's Two *Miranda* Warnings and Written Waiver of Rights Form Were Neither Voluntarily Nor Intelligently Given Because He Was Intoxicated at the Time, and Trial Counsel was Ineffective in Failing to Object on this Basis

Forrest argues that the two *Miranda* warnings law enforcement officers gave him – as well as the *Miranda* waiver form – were not valid because he was intoxicated at the time he spoke with the police. He also argues that both trial and appellate counsel were ineffective for choosing not to raise this issue. At trial, Officer Tommy Bibbs testified that he arrested Forrest, "Mirandized him there one time," placed him in the police car, "Mirandized him" again, and "took him to the police department." There, as Forrest was signing a waiver-of-rights form, Officer Bibbs "noticed [Forrest] had blood on his hand." Forrest told the officer that "it came from fishing."

Officer Bibbs advised him that "he was under arrest for shooting somebody now." Forrest "stated . . . that he hadn't shot Betty." SCR, Vol. 2, p. 71-75.

Forrest cannot show that, looking at the totality of the circumstances, his statements to the police were a result of an involuntary waiver of his *Miranda* rights. The police neither threatened nor coerced him to give his statements. The record further shows that there was no basis for Forrest's attorney to object to Officer Gibbs' testimony. Forrest has the burden of proof to show that his statements were not knowing or voluntary, and he has not carried that burden. Counsel had no reason to object on this basis, and the "[f]ailure to raise meritless objections is not ineffective lawyering, it is the very opposite." *See Clark v. Collins*, 19 F. 3d 959, 966 (5th Cir. 1994). In the list of objections that Forrest now claims his counsel should have made (including to the testimony of Andrew Ratliff), none show that his counsel was deficient under the *Strickland* test. In the absence of a deficiency, there can be no prejudice. In addition, given the devastating testimony from multiple witnesses showing his guilt, Forrest would almost certainly have been convicted of both crimes, whether or not his own statements were admitted. Thus, Forrest has not shown how any alleged deficiencies in his counsels' performance at his trial prejudiced its outcome. For these reasons, the Mississippi Supreme Court acted reasonably in holding that Forrest failed to meet the *Strickland* test and *habeas corpus* relief should be denied as to Ground 1.

### Grounds 2 and 8: Failure by Counsel to Seek Forensic Testing of Forrest's Hands (Blood and Gunshot Residue) and the Shotgun (for Fingerprints and Recent Firing)

In his second ground for relief, Forrest argues that counsel was ineffective in failing to seek forensic testing of his hands for gunshot residue and the presence of human blood. He also

believes that counsel should have sought examination of the shotgun for his fingerprints and to see if it had recently been fired. Forrest believes that, in the absence of such forensic evidence, the proof was insufficient to establish his guilt. He is mistaken. The testimony at trial, from various witnesses, including the victim, easily established Forrest's guilt beyond reasonable doubt. He arrived, drunk and armed, at Betty's house at about 6:00 p.m. When he determined she was not there, he staggered outside and fired the long gun. He then returned, still drunk and armed, and waited on Betty's front porch until about 2:30 or 3:00 a.m. (when he knew she would be returning from her job at Tyson). When Betty arrived, Forrest approached her, weapon at the ready, said "Goodbye," and shot her at point-blank range. He then fled the scene, disposed of the weapon, and confessed to at least four people: two in person, and two on the telephone. He was still drunk – and drinking more – when the police arrived to arrest him – apparently after one of the people to whom he confessed called the police. At trial, Forrest (who is a convicted felon and was at the time of the shooting) testified that on the day of the shooting, though he did not handle the shotgun found near the scene, he *did* carry a 30-06 rifle. His testimony, alone, established his guilt for being a felon in possession of a firearm. The testimony of the other witnesses easily established that Forrest committed the crime of aggravated assault.

Forensic testing of Forrest's hands and the shotgun would have added little to the defense – even if the results might have tended to exonerate him. Suppose that the blood on Forrest's hands was that of a fish (as Forrest claimed). Further suppose that forensic testing found: no gunshot residue on Forrest's hands, no fingerprints on the shotgun, and that the shotgun had not recently been fired. This would show only that Forrest had handled fish sometime recently – and that the shotgun had not been recently fired. Given the testimony outlined above, a reasonable

- 13 -

jury would likely have concluded that Forrest had shot Betty exactly as she described – but had used a different shotgun and had not gotten blood on himself. Thus, such testing would have been of little benefit to Forrest's defense, but could have been extremely harmful if it returned other results (human blood or gunshot residue on Forrest's hands, his fingerprints on the shotgun, etc.) Counsel's decision not to seek such testing was a sound one. Grounds 2 and 8 of the instant petition are therefore without substantive merit and will be denied.

### Ground 6: Failure of Counsel to Object to Trial Testimony Regarding Forrest's Two Prior Felonies

In Ground 6, Forrest argues that trial counsel should have agreed to stipulate that Forrest had committed two prior felonies, rather than permit the State to put on testimony of the felonies. Forrest believes that the failure to object and ensure a stipulation was entered constitutes ineffective assistance of counsel. First, as commission of a prior felony is an element of the crime of felon in possession of a firearm, evidence of at least one of the felonies was certainly relevant and admissible. In addition, the crimes in question, attempted grand larceny and burglary, were non-violent crimes that had occurred in 1989 and 1990, nearly 20 years before the trial in the present case. Finally, the testimony elicited was extremely brief – just enough to establish that Forrest was, indeed, a convicted felon at the time of the shooting.

> Q. [from the prosecutor] Now, as part of your investigation as a police officer, did you do any kind of background check on Mr. Forrest?
>
> A. [from Officer Tommy Bibbs] Yes, sir.
>    . . .
> Q. I hand you two documents. First one is marked State's Exhibit Number 10. Can you identify what it is?
>
> A. This is going to be a judgment against Mr. Forrest for the State of Mississippi versus him back in October 12 of '90 for burglary of a building.

Q. And I hand you State's Exhibit Number 11. Can you identify what it is?

A. This is going to be another judgment on Mr. John Forrest, State of Mississippi versus him on attempted grand larceny back in October 17, 1989.

Q. So is Mr. Forrest a convicted felon?

A. Yes, sir.

S.C.R. Vol. 2, p. 75. Indeed, it is entirely possible that, had the parties agreed to a stipulation, the court's instruction to the jury might have been longer than this exchange and called more attention to the prior crimes than did the testimony actually given. In any case, a stipulation, rather than this small amount of testimony, would not have resulted in an acquittal on either charge in this case. The evidence against Forrest was great, and his flat denial of any involvement in light of that evidence was not credible. Thus, Forrest's defense attorney gave effective legal assistance in his decision not to seek a stipulation that Forrest was a convicted felon at the time of the incident. The Mississippi Supreme Court was reasonable in its decision on this matter; as such, this ground for relief is without merit and will be denied.

### Ground 5: Counsel Should Have Requested a Competency Examination

Forrest contradicts himself in this ground for relief. In his supplemental petition, Forrest alleges in Ground 4 that the court should have ordered a competency examination. Then, in Ground 5 of the supplemental petition, he alleges that "Ground Five asserts the same issue as Ground Four[;] the difference is [that] Ground Five is framed under ineffective assistance of counsel." Thus, in Ground 5, Forrest alleges that counsel should have requested a competency hearing. However, in Ground 1 of the original petition, Forrest alleges, "My lawyer told the judge that I needed a competency hearing[,] but the judge refused." So it appears that defense

- 15 -

counsel actually requested such a hearing, after all. In any event, nothing in the record suggests that a competency hearing was necessary.

A trial court must hold a competency hearing when there is evidence that objectively creates a bona fide question as to whether the defendant is competent to stand trial. *Pate v. Robinson*, 383 U.S. 375, 385, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966), *Lokos v. Capps*, 625 F.2d 1258, 1261 (5th Cir.1980). To obtain relief, the petitioner need not establish that he was incompetent to stand trial; he need only establish that the trial judge should have ordered a hearing to determine his in competency. *See Lokos,* 625 F.2d at 1261. "The question is: Did the trial judge receive information which, objectively considered, should reasonably have raised a doubt about [the] defendant's competency and alerted him to the possibility that the defendant could neither understand the proceedings or appreciate their significance, nor rationally aid his attorney in his defense." *Id.*; *see Medina v. California,* 505 U.S. 437, 448, 112 S.Ct. 2572, 120 L.Ed.2d 353 (1992) (The key is whether the defendant had "the capacity to participate in his defense and understand the proceedings against him.") Under this standard, the trial court was not required to hold a competency hearing.

Though Forrest became agitated during his testimony, he clearly understood the nature of the proceedings. He repeatedly stated that the trial was a serious matter and that he was facing thirty years in prison if convicted. He proclaimed his innocence of the charges (at least as far as aggravated assault). He argued that the lack of forensic testing of his hands and the shotgun undermined the State's case against him. He argued that no one tested the projectiles that struck Betty Hardwick and connected them to the shotgun. Forrest obviously rejected the strategy adopted by his attorney to argue that Forrest was drunk and shot Betty Hardwick by accident. Forrest nonetheless actively, though inartfully, moved forward using the strategy of testifying

that he was not even present during the crime. The jury did not believe him, and he stands convicted.

The Mississippi Court of Appeals held: "Upon review of the record, there is nothing that would lead this Court to conclude that Forrest did not understand the proceedings against him or appreciate their significance." *Forrest,* 47 So.3d at 1196. This court agrees; there is simply no evidence of record to suggest that Forrest was not competent to stand trial. Forrest's attorney could not be faulted for deciding not to seek a competency examination.[4] As such, the decision by the Mississippi Court of Appeals was reasonable, and this ground for relief is without merit and will be denied.

### Substantive Claims: Grounds 3, 4, and 7

In Ground 3, Forrest alleges that the State violated his right to a fair trial by introducing unreliable and unfounded trial testimony that had no basis in fact. He does not, however, provide any facts to support this allegation. Bare assertions such as this are insufficient to support a federal *habeas corpus* claim. *Woodard v. Beto*, 447 F.2d 103 (5th Cir. 1971), *United States v. Woods*, 870 F.2d 285 (5th Cir. 1989). As such, Ground 3 of the instant petition will be dismissed.

In Ground 4, Forrest alleges that the trial court erred in deciding not to order a competency hearing. As set forth in the discussion of Ground 5, this allegation is without substantive merit and will be denied.

Finally, Forrest alleges in Ground 7 that his sentence is improper because he served only seven months on his 1989 conviction for attempted grand larceny. He argues that the seven-month sentence he served on that conviction cannot be used under the habitual offender statute to enhance his

---

[4] If Forrest's original petition is accurate, counsel requested one, anyway, but the trial court denied the request.

sentence. Forrest was convicted of aggravated assault under Miss. Code Ann. § 97-3-7(2)(b)[5] and possession of a firearm by a convicted felon under Miss. Code Ann. § 97-37-5(1).[6] SCR, Vol. 1, p. 7 and 41. In addition, he was sentenced as a habitual offender under Miss. Code Ann. § 99-19-81.

Miss. Code Ann. § 99-19-81 provides:

> Every person convicted in this state of a felony who shall have been convicted twice previously of any felony or federal crime upon charges separately brought and arising out of separate incidents at different times and who shall have been sentenced to separate terms of one (1) year or more in any state and/or federal penal institution, whether in this state or elsewhere, *shall be **sentenced** to the maximum term of imprisonment prescribed for such felony*, and such sentence shall not be reduced or suspended nor shall such person be eligible for parole or probation.

(Emphasis added). Thus, § 99-19-81 requires only that a defendant have been *sentenced* to one or more years of incarceration, regardless of the amount of time he actually serves on that charge.

At trial and sentencing, the State submitted evidence showing that Forrest was previously convicted of business burglary in October 1990, and was sentenced to serve seven years in custody of the MDOC. SCR, Vol. 1, p. 145. Also, he was convicted of attempted grand larceny in October 1989, and was sentenced to serve four years in MDOC custody. *Id.* After conviction, the trial court heard

---

[5] Miss. Code Ann. § 97-3-7(2)(b) provides: A person is guilty of aggravated assault if he ... (b) attempts to cause or purposely or knowingly causes bodily injury to another with a deadly weapon or other means likely to produce death or serious bodily harm ... and, upon conviction, he shall be punished by imprisonment in the county jail for not more than one (1) year or in the Penitentiary for *not more than twenty (20) years.* (Emphasis added).

[6] Miss. Code Ann. § 97-37-5 provides: (1)It shall be unlawful for any person who has been convicted of a felony under the laws of this state, any other state, or of the United States to possess any firearm ... unless such person has received a pardon for such felony, has received a relief from disability pursuant to Section 925(c) of Title 18 of the United States Code, or has received a certificate of rehabilitation pursuant to subsection (3) of this section.
(2) Any person violating this section shall be guilty of a felony and, upon conviction thereof, shall be fined not more than Five Thousand Dollars ($5,000.00), or committed to the custody of the State Department of Corrections for not less than one (1) year *nor more than ten (10) years*, or both. (Emphasis added).

testimony and reviewed documents showing Forrest's prior felony convictions.  After reviewing the documents, and hearing from Forrest himself, the trial court found that Forrest qualified for enhanced punishment as a habitual offender.  The trial court then found that his sentences were not disproportionate to his crimes, which involved use of a deadly weapon and an extremely violent assault. SCR, Vol., 2 p. 147.  The record contains ample evidence to show that Forrest is a habitual offender.  This ground for relief is without substantive merit and will be denied.

## Conclusion

In sum, all of the grounds for relief in the instant petition for a writ of *habeas corpus* are without merit and will be denied.  A final judgment consistent with this memorandum opinion will issue today.

**SO ORDERED**, this, the 29th day of July, 2014.

> **/s/ MICHAEL P. MILLS**
> **UNITED STATES DISTRICT JUDGE**
> **NORTHERN DISTRICT OF MISSISSIPPI**